UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| ANTHONY LEE BAUMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) 5:11-CV-00142-BG |
| | ) ECF |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

#### Statement of the Case

Pursuant to 42 U.S.C. § 405(g), Plaintiff Anthony Lee Bauman seeks judicial review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits. The United States District Judge transferred this case to the United States Magistrate Judge for further proceedings. Pursuant to the Order of transfer, the undersigned now files this Report and Recommendation.

On August 20, 2009, Bauman and a vocational expert testified at a hearing before an administrative law judge (ALJ). Bauman was represented by counsel at the hearing. The ALJ determined on November 12, 2009, that Bauman was not disabled because he could have performed jobs that existed in significant numbers in the national economy. The Appeals Council denied review on June 9, 2011. Therefore, the ALJ's decision is the Commissioner's final decision and properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (holding that the Commissioner's final decision "includes the Appeals Council's

1

denial of [a claimant's] request for review").

## Standard of Review

A plaintiff is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A) (2012).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. § 404.1520(a)(4) (2012). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's residual functional capacity (RFC), defined as "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1520(a)(4); 404.1545(a)(1).

The court must affirm the Commissioner's decision unless it finds that (1) the ALJ applied an incorrect legal standard or (2) the ALJ's determination is not supported by substantial evidence. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). "Substantial evidence is more than a scintilla but less than a preponderance and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

**Factual Background**

Bauman claims that he is disabled due to major depressive disorder and back, neck, and shoulder problems. (Tr. 112.) From 1992 to 1996, he worked intermittently as a pizza delivery driver; and from 1997 to 2000, he worked as a mechanic at a putt-putt golf course. (Tr. 113–14, 130–33.) He claims that he became disabled on October 1, 2000, at age 35 when a go-kart fell on him while he was working as a mechanic. (Tr. 109, 113–14.)

The day after the go-kart accident, Bauman went to the emergency room for his injuries. (Tr. 197–98.) The emergency room physician found that Bauman had limited range of motion in his right shoulder but "no other significant restrictions or abnormalities on physical examination." (Tr. 197.) The physician found no radiographic evidence of an acute fracture and diagnosed Bauman with low back pain and a right shoulder bruise and strain. (Tr. 198.) Ten days later, orthopedic surgeon Robert V. Carr, M.D., examined Bauman for his injuries and diagnosed a mild to moderate right shoulder contusion and muscle strain. (Tr. 274.) The following month, an MRI of Bauman's right shoulder revealed mild degenerative changes but no evidence of a tear or fracture. (Tr. 272.) In January 2001, an MRI of Bauman's lumbar spine revealed mild degenerative disc changes at two locations and minimal degenerative disc changes at one location. (Tr. 267.)

In February 2001, Dr. Carr performed an arthroscopy of Bauman's right shoulder without complication. (Tr. 205–06.) According to Dr. Carr, Bauman had improved since his injury but

continued to have pain and therefore elected to undergo surgery. (Tr. 202.) Bauman's postoperative diagnoses were listed as symptomatic anterior glenoid labral detachment and chronic impingement tendinitis. (Tr. 205.) From March through December of 2001, Bauman exhibited increased range of motion and reported pain relief from injections, electrical stimulation, and pain medication. (Tr. 229–30, 247, 249–51, 256–57, 332.) In June 2001, Dr. Carr opined that Bauman could perform a restricted range of light work. (Tr. 250.) In December 2001, non-treating physician Gerald Hill, M.D., examined Bauman and reviewed his medical records in connection with his workers' compensation claim. (Tr. 286–91, 345.) Dr. Hill concluded that Bauman could do sedentary work. (Tr. 291.) Dr. Hill examined Bauman and reviewed his medical records three additional times during Bauman's insured status. (Tr. 280–85, 358–70.)

In January 2002, Dr. Carr performed a discectomy after an MRI revealed a herniated disc at one location in Bauman's cervical spine. (Tr. 207–08, 217–18, 253.) Following surgery, Bauman's strength, range of motion, and function improved. (Tr. 222–27, 241–42.) He also repeatedly reported that medication, injections, and electrical stimulation helped relieve his pain and improve his function and quality of life. (Tr. 359, 365, 407–08, 413–14, 416–17, 444, 448.)

Bauman was last insured on December 31, 2005. (Tr. 109.) "Claimants bear the burden of establishing a disabling condition before the expiration of their insured status." *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000) (quoting *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

**Discussion**

I.   Bauman has not shown prejudice sufficient to warrant reversal.

The ALJ found that Bauman had the RFC to perform sedentary work except that he could not drive, be around dangerous moving machinery, work overhead, or do tasks that require constant handling. (Tr. 14.) The ALJ also found that Bauman was limited to understanding, remembering, and carrying out detailed but not complex tasks. *Id.* Bauman argues that the ALJ did not comply with Social Security Ruling 96-9p in that he "failed to note medical or non-medical evidence which supported his conclusions" that Bauman was subject to the aforementioned restrictions. (Pl.'s Br. 27.) Pursuant to Social Security Ruling 96-9p, an RFC assessment "must include a narrative that shows the presence and degree of any specific limitations and restrictions, as well as an explanation of how the evidence in [the] file was considered in the assessment." SSR 96-9p, 1996 WL 374185, at *5 (July 2, 1996).

In general, "where the rights of individuals are affected, an agency must follow its own procedure, even where the internal procedures are more rigorous than otherwise would be required." *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). However, the Court of Appeals for the Fifth Circuit requires "a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision." *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001). Thus, an ALJ "is not always required to do an exhaustive point-by-point discussion" to comply with a regulation. *Audler*, 501 F.3d at 448. Procedural perfection is not required "as long as 'the substantial rights of a party have not been affected.'" *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).

Bauman does not argue that additional limitations should have been included in his RFC or otherwise indicate that he has been prejudiced by the ALJ's allegedly insufficient explanation for his RFC assessment. To the contrary, to the extent that Bauman may argue that he is not subject to the limitations found by the ALJ, Bauman benefited from the ALJ's decision to recognize additional limitations because those limitations "eroded" the range of sedentary work that Bauman could perform and therefore increased the likelihood that Bauman would be found disabled. *See* SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996) ("[T]he ability to do even a *limited* range of sedentary work does not in itself establish disability in all individuals, although a finding of 'disabled' usually applies when the full range of sedentary work is significantly eroded[.]").

In addition and in the alternative, substantial evidence supports the ALJ's decision not to include additional limitations in his RFC. Bauman indicated that he occasionally drove, shopped in stores, and used a computer. (Tr. 39, 49–50, 125, 282, 366.) He repeatedly exhibited improvement in his strength and range of motion; and he regularly reported that medication, injections, and electrical stimulation helped relieve his pain and improve his function and quality of life. (Tr. 202, 224–27, 229–31, 241–42, 247, 249–50, 256–57, 266, 268–69, 332, 359, 407–08, 413–14, 416–17, 444, 448.) "[P]ain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam).

In June 2001, Bauman's treating orthopedist, Dr. Carr, found that Bauman could return to a limited range of light work. (Tr. 250.) In December 2001, Dr. Hill examined Bauman and reviewed his medical records in connection with his workers' compensation claim. (Tr. 286–91, 345.) According to Dr. Hill, Bauman indicated that his condition had remained "about the same"

6

since the accident and that he could sit for thirty minutes at one time, stand for thirty minutes at one time, walk one and one-half block, and lift between five and ten pounds. (Tr. 287.) Upon physical examination, Dr. Hill reported that Bauman could bend over to within sixteen inches of touching the floor, turn his neck 45 degrees to the left and right, lift his left arm up to within 20 degrees of vertical, and lift his right arm horizontally. (Tr. 289.) Dr. Hill concluded that Bauman could do sedentary work. (Tr. 291.)

Dr. Hill examined Bauman and reviewed his medical records again in July 2002. (Tr. 280–85.) Upon physical examination, Dr. Hill reported that Bauman could bend 70 degrees at the waist, rotate his neck 40 degrees to the left and 45 degrees to the right, lift his left arm up to within 30 degrees of vertical, and lift his right arm 20 degrees above horizontal. (Tr. 282–83.) Dr. Hill also found that Bauman displayed no atrophy and no significant tenderness in his cervical area or lower back. (Tr. 283.) Dr. Hill again concluded that Bauman could do sedentary work, although he stated that the work "would probably have to be with limited hours and in a non-stressful situation." (Tr. 284.)

In view of the foregoing substantial evidence, Bauman has not shown prejudice necessary to warrant reversal. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (upholding ALJ's non-disability finding due to lack of prejudice because alleged impropriety did not "render the ALJ's determination unsupported by substantial evidence").

II.     The ALJ properly assessed Bauman's credibility.

Bauman argues that the ALJ did not explain why he found that Bauman's subjective complaints of migraine headaches and medication side effects were inconsistent with objective evidence. (Pl.'s Br. 27–28.)

7

Statements about a claimant's pain or other symptoms "will not alone establish that [he is] disabled[.]" 20 C.F.R. § 404.1529(a). Symptoms render an individual disabled only to the extent that "alleged functional limitations and restrictions . . . can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* § 404.1529(c)(4). To the extent that an individual's statements about the intensity, persistence, and limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). This assessment includes consideration of "side effects of any medication" a claimant takes to alleviate his pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). An ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

The ALJ acknowledged Bauman's testimony that he experienced migraine headaches and that his medications caused problems with his concentration and memory and made him feel "fuzzy headed" and tired. (Tr. 15–16, 36, 44.) The ALJ then stated, "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (Tr. 16.) Later the ALJ specified, "I note that the claimant has consistently complained of . . . headaches. . . . However, given his response to treatment, the objective medical evidence does not completely support the claimant's allegations that he was unable to work on a full-time consistent basis." (Tr. 18.) He also stated, "I have given the

claimant the benefit of all doubt regarding the impact of his subjective complaints of pain upon his mental functioning and limited him to the performance of detailed, but not complex, tasks. However, I do not find that, even when giving the claimant the full benefit of the doubt regarding his subjective impairments, these symptoms of pain would limit the claimant further." *Id.*

The previously described substantial evidence that supports the ALJ's RFC assessment also supports his conclusion that Bauman's subjective complaints about his headaches and mental functioning were not fully credible. In addition, a consulting physician and consulting psychologist reviewed Bauman's medical records in connection with his application for benefits and concluded that his alleged limitations were not fully supported by the evidence of record. (Tr. 566, 579.) Furthermore, Bauman reported that injections helped relieve his headaches. (Tr. 45–46, 359.) "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

For the foregoing reasons, substantial evidence supports the ALJ's assessment of Bauman's credibility, which is therefore entitled to judicial deference. *See Villa*, 895 F.2d at 1024.

III.   The ALJ was entitled to rely on the vocational expert's testimony.

At the hearing before the ALJ, the vocational expert testified that a person with Bauman's age, education, work history, and RFC could perform the jobs of lens inserter, final assembler, and circuit board assembler. (Tr. 47–48.) The vocational expert further testified that there were 26,000 lens inserters, 18,000 final assemblers, and 39,000 circuit board assemblers nationwide. *Id.* The vocational expert's testimony constitutes substantial evidence to conclude that Bauman was not disabled because he could perform jobs that existed in significant numbers in the national economy. *See Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (holding that substantial evidence

supported ALJ's finding that jobs available to claimant existed in the national economy because vocational expert testified to that effect and explained how he arrived at his conclusions).

Bauman asserts that the jobs identified by the ALJ are inconsistent with the limitations he found. (Pl.'s Br. 29.) Specifically, Bauman argues that he cannot perform the identified jobs because he "can not constantly handle items, work around dangerous machinery, [or] understand[] and remember detailed tasks." (Pl.'s Br. 29.) With regard to constant handling, the vocational expert testified that the identified jobs required frequent, not constant, handling. (Tr. 48.) According to the Dictionary of Occupational Titles, the term "frequently" indicates that an activity occurs "from 1/3 to 2/3 of the time"; the term "constantly" indicates that an activity occurs "2/3 or more of the time." Dictionary of Occupational Titles app. C at 1013 (4th ed. 1991). The ALJ was entitled to rely on the vocational expert's testimony to conclude that Bauman's inability to handle items constantly did not preclude him from doing the identified jobs. *See Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986) ("The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."). Bauman's argument regarding his inability to work around dangerous machinery fails for the same reason. *See Garcia v. Apfel*, 220 F.3d 585 (5th Cir. 2000) (unpublished table decision) (holding that substantial evidence supported ALJ's finding that a claimant restricted from exposure to hazardous machinery could perform a job that required working around a moving conveyor belt because vocational expert testified to that effect).

Bauman's argument that the identified jobs are inconsistent with the ALJ's finding that he could not perform detailed tasks also fails.[1] It is true that the inability to perform detailed tasks

---

[1] In fact, the ALJ found that Bauman could perform detailed tasks. (Tr. 14.)

might prevent a claimant from performing the job of circuit board assembler, which requires level three reasoning, defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." Dictionary of Occupational Titles app. C at 1011 (4th ed. 1991); *id.* at 733 (Listing 726.684-070). However, the other two jobs identified by the vocational expert – final assembler and lens inserter – require only level one reasoning, defined as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with occasional or no variables in or from these situations[.]" *Id.* app C at 1011; *id.* at 709 (Listings 713.687-018, 713.687-026). Bauman does not dispute his ability to carry out simple one- or two-step instructions. His alleged inability to perform detailed tasks therefore does not cast any doubt on his ability to perform the jobs of final assembler and lens inserter, both of which exist in significant numbers in the national economy according to the vocational expert's testimony. Once again, the ALJ's reliance on the vocational expert's testimony was proper. *See Vaughan*, 58 F.3d at 132; SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996) (noting that a vocational expert "may be asked to provide . . . citations of the existence and number of jobs in [certain] occupations in the national economy").

IV. The ALJ properly considered the opinions of consulting physician Dr. Hill and of Bauman's treating physicians.

Dr. Hill examined Bauman and reviewed his medical records in connection with his workers' compensation claim on four separate occasions during Bauman's alleged period of disability. (Tr. 280–91, 345, 358–70.) After the first two appointments, Dr. Hill concluded that Bauman could perform sedentary work. (Tr. 284, 291.) After the third appointment, Dr. Hill expressed no opinion about Bauman's ability to work. (Tr. 358–63.) However, Dr. Hill stated that Bauman's shoulder

was "probably as good as it is going to get to be and is something that could be worked around and has fairly minimal symptoms with some pain on elevation and range of motion." (Tr. 362.) After the fourth appointment, which occurred in March 2005, Dr. Hill reached the following conclusion:

> He is nonfunctional and I do not think that you are going to see any end to this until the emotional aspects of this case are dealt with. . . . As far as work goes, he does not appear to be able to work at this point. I think this has beat him down and he has given up. . . . A single level [surgery] in the cervical area should not be disabling in itself and the shoulder surgery should not be disabling . . . by itself either. One would be able to work with some modified duty. But again the pain in the low back and the combination of all these things is what is giving us a problem.

(Tr. 368–69.)

Bauman asserts that substantial evidence does not support the ALJ's decision to disregard Dr. Hill's conclusion that Bauman was unable to work after the March 2005 appointment. (Pl.'s Br. 31.) His argument fails for two reasons. First, Dr. Hill's conclusion that Bauman was unable to work is not be entitled to any special significance as an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d) (stating that opinions on issues reserved to the Commissioner, including opinions by medical sources that a claimant is disabled or unable to work, are not entitled to any special significance); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) ("Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'" ).

Second, Dr. Hill opined that Bauman's inability to work was the result of his pain and emotional problems, not the result of his medically determinable impairments. (Tr. 368–69.) Substantial evidence supports the ALJ's assessment of Bauman's subjective complaints of pain for reasons discussed in sections I and II of this opinion. Substantial evidence also supports the ALJ's

12

conclusion that Bauman's emotional problems were not disabling. Bauman testified that his anti-depressant medications "worked well" and even "great" on some days. (Tr. 38–39.) As previously explained, a "medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Lovelace*, 813 F.2d at 59. Furthermore, Bauman sought psychological counseling only three times over the five-year period of alleged disability. (Tr. 584–86.) The ALJ was entitled to rely on this paucity of treatment as an indication that Bauman's psychological problems were not disabling. *See Villa*, 895 F.2d at 1024 (holding that an ALJ "was not precluded from relying upon the lack of treatment as an indication of nondisability").

Finally, Bauman argues that the ALJ failed to mention various medical records prepared by his treating physicians and a physical therapist. (Pl.'s Br. 31–32.) However, an ALJ "is not required to recite every [piece] of evidence which the claimant considers helpful to her case." *Hall v. Barnhart*, 31 F. App'x 839 (5th Cir. 2002) (per curiam). "That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence." *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) (per curiam).

V.   The ALJ's reference to evidence related to a claimant other than Bauman was a typographical error.

In his decision, the ALJ included the following statement, which presumably referred to a claimant other than Bauman: "In reaching my conclusion as to the claimant's residual functional capacity, I have considered the objective findings on the claimant's examinations and the claimant's subjective complaints, as well as the claimant's statement that she believed she could return to her past work as a tortilla labeler and packager, as outlined above." (Tr. 19.) Nothing in the administrative record indicates that Bauman ever worked as a tortilla labeler or packager. Bauman argues that it was error for the ALJ "to consider another claimant's objective or subjective medical

13

evidence" when considering his claim. (Pl.'s Br. 33.)

Bauman's argument is without merit. With the exception of the single reference to evidence that presumably related to another claimant, the ALJ cites evidence that relates solely to Bauman in his opinion. Furthermore, the ALJ accurately describes Bauman's past relevant work as a mechanic and pizza delivery driver elsewhere in his opinion. (Tr. 19.) For the foregoing reasons, the ALJ's objectionable statement is a typographical error that "does not render the ALJ's determination unsupported by substantial evidence" and therefore does not prejudice Bauman. *Morris*, 864 F.2d at 336. Accordingly, remand is not required. *See id.*

## Conclusion

For the foregoing reasons, the undersigned recommends that the United States District Court **AFFIRM** the Commissioner's decision and **DISMISS** Bauman's complaint with prejudice.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *superceded by statute on other*

*grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

        Dated:        April 30, 2012.

                                            NANCY M. KOENIG
                                            United States Magistrate Judge